IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC JONES, | No. C 08-0373 CW |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| CITY AND COUNTY OF SAN FRANCISCO, et. al., | |
| Defendants. | |
| CHRISTOPHER GASCON, | No. C. 08-05734 CW |
| Plaintiff, | |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | |

Defendants move for summary judgment on Plaintiffs Jones and Gascon's claims for civil rights violations under 42 U.S.C. § 1983 and on Jones' related state law claims. Plaintiffs cross-move on the § 1983 claims. The matter was heard on August 6, 2009. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES both motions for summary judgment.[1]

---

[1] Defendants move to strike Plaintiffs' reply brief, which was filed five days late and which Defendants contend makes new arguments that are not permitted at this stage of briefing. Plaintiffs argue that the delay was due to a one-time clerical

BACKGROUND

This action arises from an encounter between Plaintiffs and San Francisco Police Officers Buhagiar and Razzak in the South of Market area of San Francisco on December 27, 2006. Plaintiffs' and Defendants' accounts of the encounter differ significantly, but the parties agree that the officers stopped Plaintiffs near the corner of Sixth and Howard streets, asked them some questions, and conducted a search of their persons. Plaintiffs were not arrested.

Based on this encounter, Jones and Gascon each brought separate actions against the officers, Chief of Police Heather Fong and the City and County of San Francisco, which were deemed to be related cases and were subsequently consolidated. Both complaints claim violations of 42 U.S.C. § 1983. Jones' complaint also includes causes of action under state law for false imprisonment, assault and battery, intentional infliction of emotional distress, and violation of California Civil Code § 52.1. Because the parties' accounts vary so widely, they are described separately below. Plaintiffs' version must be accepted as true for purposes of Defendants' motion, and Defendants' version must be accepted as true for purposes of Plaintiffs' motion.

A. Defendants' description of the encounter

Officers Buhagiar and Razzak are long-time veterans of the San Francisco Police Department. On the day in question, they were

---

error, and that all of their arguments are permissible. Defendants' motion to strike is denied. Plaintiffs' delay in filing was brief, caused by a one-time error, and did not prejudice Defendants. See Pincay v. Andrews, 389 F.3d 853, 858-50 (9th Cir. 2004)(en banc). The reply does not make impermissible arguments.

2

assigned to patrol Sixth street, an area they knew to be high in crime.  In particular, Sixth street was known as the primary base of operations for a gang known as the Hustle Boys, which engaged in drug dealing and other types of violent, gang-related activities.  Osborn Dec. Ex. A (Razzak Dep.) at 24:8-25:9, 76:21-77:7.  The officers believed that Gascon was affiliated with the Hustle Boys.  Razzak Dep. at 24:8-14.  They had seen Gascon selling drugs in the presence of known Hustle Boys gang members.  Razzak Dep. at 28:4-22; Osborn Dec. Ex. D (Buhagiar Dep.) at 41:1-15.  They also knew that Gascon had been arrested for drug-related offenses.  Buhagiar Dep. at 40:14-21.

   A few weeks prior to the encounter that is the subject of this action, a member of the Hustle Boys was shot by a member of a rival gang.  Razzak Dep. at 76:21-23.  Based on information from confidential informants, the officers knew that members of the Hustle Boys were planning retaliation.  Id.  They also knew that Gascon had recently been seen carrying a weapon.  Buhagiar Dep. at 81:13-21.

   In the late afternoon of December 27th, the officers observed Gascon and an individual they were not familiar with -- Jones -- standing on the corner of Sixth and Howard streets.  Buhagiar Dep. at 61:19-25.  The officers saw Jones and Gascon standing in the same location forty-five minutes later as they completed a survey of their patrol area.  Id. at 71:20-23.  They were concerned that Jones might be a member of an out-of-town gang who had been brought in to help with the planned retaliation.  Razzak Dep. at 76:19-77:2.  According to Officer Razzak, they pulled up next to

1  Plaintiffs a few minutes later, as Plaintiffs were walking down the
2  street, and got out of the car. Id. at 79:15-18.  Officer Razzack
3  and Gascon engaged in informal conversation. Id. at 79:19-80:1;
4  83:2-9.  The officers explained the purpose of the stop and asked
5  Plaintiffs for identification.  Razzak Dep. at 79:23-80:6, 88:9-18;
6  Buhagiar Dep. at 101:10-21.  Once Plaintiffs provided their names
7  and dates of birth, Officer Razzak called dispatch and asked for a
8  search of both Plaintiffs' criminal history.  Buhagiar Dep. at
9  112:3-114:6.  A follow-up call to dispatch revealed that Jones had
10 previously been arrested on weapons charges.  Id. at 137:2-6.
11 Based on this information, the officers believed he might pose a
12 threat to their safety and conducted a pat-down search of both
13 Plaintiffs' outer clothing. Razzack Dep. at 87:89-:18.  Finding no
14 weapons or other contraband, the officers told Plaintiffs they were
15 free to leave.  Officer Razzack estimated that the whole encounter
16 lasted approximately five minutes. Id. at 92:1-3.

B.   Plaintiffs' description of the encounter

     Jones and Gascon's accounts are substantially similar to one
another; differences between them are noted when relevant.  As
Jones was leaving work shortly before 4 p.m. on December 27th, he
saw his old friend Christopher Gascon standing on a nearby corner.
Nisenbaum Dec. Ex. A (Jones Dep.) at 64:6-17.  Jones told Gascon
that he was headed to a gym in the vicinity, and Gascon decided to
accompany him. Id. at 66:9-11.  As they were walking, an unmarked
police car pulled up alongside and Officers Buhagiar and Razzak
exited the vehicle.  Id. at 67:19-68:21.  The officers immediately
ordered Plaintiffs up against the wall.  Jones Dep. at 70:5-13,

4

72:1-7; Nisenbaum Dec. Ex. B (Gascon Dep.) at 96:2-14.

According to Jones, Officer Buhagiar pat-searched his external garments and pockets. Jones Dep. at 74:6-25. Over Jones' objection, Officer Buhagiar then stuck his hand down the back of his pants, and inserted his finger into Jones' anus. Id. at 76:5-78:16. The officer also felt under his testicles. Id. at 81:5-19. Jones saw Officer Razzak conduct a similar cavity search of Gascon. Id. at 79:1-3

After conducting the search, the officers asked Jones for identification, and called dispatch for a search of his criminal history. Jones Dep. at 79:20-80:18. Officer Razzak informed Officer Buhagiar that Jones was "clean," but he wrote down Jones' information "just in case." Id. at 84:15-23. He informed Jones that he could file a complaint at police headquarters, but if he did, he "will have a fucked up day after that." Jones Dep. at 84:20-23; Gascon Dep. at 136:14-25.

According to Gascon, the officers first asked Plaintiffs for identification. Gascon Dep. at 65:17-21. Next, they called dispatch for a search of Plaintiffs' criminal history, placed handcuffs on both Plaintiffs and forced them to turn around and face the wall. Id. at 104:10-105:3. Officer Razzak proceeded to conduct a cavity search of Gascon, inserting his finger into Gascon's anus, and feeling under his testicles. Id. at 107:14-108:10. While he was being searched, Gascon saw Officer Buhagiar reach inside of Jones' pants. Id. at 112:1-10. The officers threatened Gascon and Jones that if they made a complaint, the officers would track them down and hurt them. Id. at 137:2-18.

5

After the search and seizure, Plaintiffs walked to police headquarters on Bryant street and filed a complaint. Jones Dep. at 90:24-91:14; Gascon Dep. at 137:19-21.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of

6

production by either of two methods.  <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  <u>Nissan</u>, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no

7

1  obligation to offer any evidence in support of its opposition.  Id.
2  This is true even though the non-moving party bears the ultimate
3  burden of persuasion at trial.  Id. at 1107.

4  Where the moving party bears the burden of proof on an issue
5  at trial, it must, in order to discharge its burden of showing that
6  no genuine issue of material fact remains, make a prima facie
7  showing in support of its position on that issue.  UA Local 343 v.
8  Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That
9  is, the moving party must present evidence that, if uncontroverted
10 at trial, would entitle it to prevail on that issue.  Id.; see also
11 Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th
12 Cir. 1991).  Once it has done so, the non-moving party must set
13 forth specific facts controverting the moving party's prima facie
14 case.  UA Local 343, 48 F.3d at 1471.  The non-moving party's
15 "burden of contradicting [the moving party's] evidence is not
16 negligible."  Id.  This standard does not change merely because
17 resolution of the relevant issue is "highly fact specific."  Id.

18                               DISCUSSION
19 A.  Violation of 42 U.S.C. § 1983

20 All parties move for summary judgment on Plaintiffs' § 1983
21 claim.  Plaintiffs' claim is predicated on Defendants' alleged
22 violation of their right to be free from unreasonable searches and
23 seizures as guaranteed by the Fourth and Fourteenth Amendments.
24 The parties' deposition testimony is in direct conflict with regard
25 to several material facts, including the events leading up to
26 Plaintiffs' encounter with Officers Buhagiar and Razzak, the
27 duration of the stop and the scope of the search.  Therefore, the

8

Court cannot grant summary judgment to Plaintiffs or Defendants.

1. Qualified Immunity

Defendants maintain that the doctrine of qualified immunity shields them from liability for Plaintiffs' § 1983 claims. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The threshold question is whether, if all factual disputes were resolved in favor of the party asserting the injury, the evidence would show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. On the other hand, if a violation could be made out on the allegations, the next step is to ask whether the constitutional right at issue was clearly established. Id. The question here is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Id.

In Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808 (2009), the Supreme Court overruled Saucier's requirement that the court must determine first whether there was a constitutional deprivation and then whether such right was clearly established. Under Pearson,

9

the court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Id. (noting that though the Saucier sequence is often appropriate and most efficient, it is no longer mandatory).

Plaintiffs claim that the officers are not entitled to qualified immunity because their conduct violated the clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

In Terry v. Ohio, the Supreme Court held that the Fourth Amendment permits an officer to stop an individual for questioning upon reasonable suspicion that criminal activity is afoot. 392 U.S. 1, 24 (1968). If the officer has reason to believe that the individual is armed and dangerous, he or she may conduct a limited pat-down search of outer clothing in order to search for weapons. Id. at 30. The search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26. Furthermore, the stop may not be prolonged longer than reasonably necessary to effectuate the original purpose of the stop. Illinois v. Caballes, 543 U.S. 405, 407-8 (2005). However, in U.S. v. Mendenhall, the Supreme Court explained that not all encounters between police officers and citizens are "seizures" within the meaning of the Fourth Amendment. 446 U.S. 544, 552 (1980). A seizure occurs only when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554.

Defendants contend that, up until the point of the alleged

body cavity searches, the undisputed material facts demonstrate that the officers' conduct did not violate any of Plaintiffs' clearly established constitutional rights.  Defendants assert that the initial, consensual interaction between Plaintiffs and the officers was not a seizure, and that the subsequent stop and pat-down search were permissible under Terry.  Therefore, Defendants argue that they are entitled to summary judgment on at least a portion of Plaintiffs' § 1983 claim.  Contrary to Defendants' assertions, there are several disputed material facts that prevent entry of summary judgment on the basis of qualified immunity. Viewing the evidence in the light most favorable to Plaintiffs, Defendants' actions may have violated Plaintiffs' Fourth Amendment rights, which were clearly established at the time of the stop and the search.

   Defendants maintain that the initial encounter was a consensual conversation and not a seizure implicating Fourth Amendment rights.  In their depositions, however, both Jones and Gascon stated that the officers immediately ordered them up against the wall as they exited their unmarked patrol car.  Accepting the truth of these statements, under the circumstances, reasonable people would not have felt they were free to leave.  Mendenhall, 446 U.S. at 554.

   In addition, Defendants maintain that the stop met the standard set forth in Terry because the officers had reasonable suspicion of criminal activity.  They argue that Plaintiffs were loitering in an area known for gang activity, the officers had information about a planned retaliation attack, and Gascon had

11

recently been seen carrying a weapon.  Jones and Gascon, however, deny that they were loitering, and instead maintain that they were walking down the street towards a nearby gym.  Therefore, Plaintiffs have demonstrated disputed material facts as to whether the officers' conduct prior to the alleged body cavity search violated clearly established constitutional rights.  Defendants are not entitled to summary judgment on this portion of Plaintiffs' § 1983 claim.

    2.   Legality of the Stop and Search

In their cross-motion for summary judgment Plaintiffs contend that even under Defendants' version of events, the stop and search violated their Fourth and Fourteenth Amendment rights.  They assert that the officers did not have reasonable suspicion to stop them and that the detention extended longer than legally permissible given the purported purpose of the stop.

Viewed in the light most favorable to Defendants, the evidence indicates that the officers' actions may not have violated Fourth Amendment protections against unreasonable searches and seizures.  According to the officers' deposition testimony, they had reliable information that Gascon was a member of the Hustle Boys gang, and that the gang was planning a retaliation attack. They also knew that Gascon had recently been seen carrying a weapon, and that the Hustle Boys gang was actively recruiting new members.  The officers testified that they briefly stopped Plaintiffs and asked for their identification.  Only after learning that Jones had been arrested on weapons-related charges did they order Plaintiffs to stand up against the wall and conduct a limited

12

1  pat-down search.  They maintain that the entire encounter lasted
2  only five to ten minutes.  Resolving the conflicting accounts would
3  require the Court to make a credibility determination, and
4  Plaintiffs are not entitled to entry of summary judgment on the
5  § 1983 claim.

B.   False Imprisonment

Defendants move for summary judgment on Jones' false imprisonment claim.  They argue that the individual Defendants are immune from liability based on California Government Code § 820.2, which provides that public employees are not liable for injuries resulting from their discretionary acts.  Additionally, Defendants maintain that the City and County is derivatively immune under § 815.2(b).  Contrary to Defendants' assertion, discretionary immunity under § 820.2 does not extend to claims for false arrest and false imprisonment.  Cal. Gov't. Code § 820.4 ("Nothing in this section exonerates a public employee from liability for false arrest or imprisonment"); see also Asgari v. City of Los Angeles, 15 Cal. 4th 744, 752 (1997) (holding that § 820.4 prevented police officers from asserting statutory immunity for plaintiff's false arrest and imprisonment claims stemming from his arrest on drug-related felony charges).  Defendants' motion for summary judgment on Jones' false imprisonment claim is denied.

C.   Assault

Defendants move for summary judgment on Jones' claim for assault.  They argue that he has failed to meet his burden because there is no evidence that he anticipated the harmful touching and he testified in his deposition that he was "surprised" by the

13

1 cavity search.  See Judicial Counsel of Cal. Civil Jury
2 Instructions No. 1301 (2008) (listing the elements of an assault
3 claim); Kiskey v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d
4 222, 232 (1983) ("The tort of assault is complete when the
5 anticipation of harm occurs").

6     Jones' deposition testimony demonstrates that he anticipated
7 harmful touching before the cavity search occurred.  He testified
8 that "as he [the officer] is putting his hand down my back, about
9 to go inside my boxers, I flinched away and said 'You can't do
10 this.'"  Jones Dep. at 78:21-23.  Therefore, Defendants' motion for
11 summary judgment on the assault claim is denied.

12 D.  Intentional Infliction of Emotional Distress

13     Defendants move for summary judgment on Jones' sixth cause of
14 action, for intentional infliction of emotional distress.
15 Defendants argue that Jones has adduced no evidence demonstrating
16 that he suffered from severe or extreme emotional distress.  To
17 succeed on a claim for intentional infliction of emotional
18 distress, a plaintiff must demonstrate: 1) that the defendant
19 engaged in extreme and outrageous conduct with the intention of
20 causing emotional distress, or reckless disregard of the
21 probability of causing emotional distress, 2) the plaintiff
22 suffered severe or extreme emotional distress and 3) the
23 defendant's conduct was the actual and proximate cause of the
24 plaintiff's emotional distress.  Potter v. Firestone Tire & Rubber
25 Co., 6 Cal. 4th 965, 1001 (1993).

26     There are disputed material facts as to whether Jones suffered
27 severe emotional distress.  Defendants note that Dr. William

28

14

Hooker, who conducted an independent psychological examination of Jones, did not find evidence of emotional distress. Osborn Dec. Ex. F. Contrary to Dr. Hooker's findings, however, Jones testified that he suffered severe and lasting emotional distress from the incident. He stated that, for several weeks after the incident, he didn't feel he could exit or enter through the front door of his own home, and instead jumped fences and cut through yards. Jones Dep. at 141:17-25. In addition he testified that, because of the physical violation he suffered, he felt he had to be "rougher" and "more of a man" with his girlfriend to prove that he wasn't weak. Id. at 146:4-147:24. Finally, Jones testified that, although he did not see a mental health professional about his symptoms or take any prescription medication, he self-medicated with increased marijuana use to help him forget the incident. Id. at 144:7-16. It is true that Jones has not produced any objective medical documentation corroborating his emotional distress. But California law does not require objective evidence. Hailey v. California Physicians' Service, 158 Cal. App. 4th 452, 477 (2008). Determination of whether Jones' suffered sufficient emotional distress to support his claim would require the Court to make a credibility determination between Dr. Hooker's evaluation and Jones' self-reported symptoms. Therefore, Defendants are not entitled to summary judgment.

E.  Violation of California Civil Code § 52.1

Defendants move for summary judgment on Jones' claim for violation of California Civil Code § 52.1. Section 52.1 imposes civil liability on a person who, "whether or not acting under color

15

of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(a).

Defendants argue that to prevail on a claim under § 52.1, a plaintiff must prove two distinct elements: first, the use of threats, intimidation and coercion, and second, interference or attempted interference with a separate right under the state or federal Constitution. They maintain that Jones' claim, which is based on the allegedly unreasonable search and seizure, impermissibly conflates these two elements. Even if the search was affected through threats, intimidation and coercion, they contend that Jones has not demonstrated that a separate, additional right was violated.

Defendants' argument is not persuasive. The California Supreme Court and other courts in this district have held that unreasonable searches and seizures are sufficient to support a claim under § 52.1 when the searches are accompanied by threats, intimidation or coercion. Venegas v. County of Los Angles, 32 Cal.4th 820, 842-43 (2004)(searches and seizures accompanied by use of threats and intimidation are sufficient to support a claim under § 52.1, even without proof that actions were motivated by discriminatory intent); see also Cole v. City of Emeryville Police Dep't., 387 F. Supp. 2d 1084, 1102-03 (N.D. Cal. 2005)(unreasonable search and seizure accompanied by coercion is sufficient to support

16

a claim under § 52.1). Moreover, Jones testified in his deposition that the officers threatened him in an attempt to prevent him from filing a complaint with the police department.

Finally, Defendants claim that they are immune from liability on Jones' § 52.1 claim based on California Penal Code § 836.5. Section 836.5 provides that if public officers or employees lawfully arrest an individual for a misdemeanor, or have reasonable cause to believe the arrest was lawful, they will be immune from civil liability for false arrest or false imprisonment. Section 836.5 is inapplicable here, however, because neither Jones nor Gascon was arrested. After the search was completed, the officers told Plaintiffs that they were free to leave. Defendants' motion for summary judgment on Jones' § 52.1 claim is denied.

F.  Claims Against Chief of Police Fong

Defendants move for summary judgment on claims against Chief Fong. They argue that Plaintiffs have failed to identify evidence demonstrating that Chief Fong participated in any wrongdoing, and that a § 1983 claim cannot be based on vicarious liability alone. Defendants' motion on this point is premature. Pursuant to the Court's January 5, 2009 Order, all Monell discovery related to claims against the City and County and Chief Fong was stayed pending the trial of Plaintiffs' claims against the individual officers. (Docket No. 62). Defendants' motion is denied without prejudice.

17

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 86) is DENIED and Plaintiffs' cross-motion for summary judgment (Docket No. 95) is also DENIED.  Pursuant to stipulation by the parties, Jones' Eighth Cause of Action for negligence is dismissed.

IT IS SO ORDERED.

Dated: 09/18/2009

CLAUDIA WILKEN
United States District Judge